958 A.2d 73 (2008)
403 N.J. Super. 261
PHOENIX FUNDING, INC., Plaintiff-Appellant,
v.
Shartane and Robert KRUTE, Defendants-Respondents.
No. A-1706-07T3
Superior Court of New Jersey, Appellate Division.
Argued September 9, 2008.
Decided October 10, 2008.
*74 Keith A. Bonchi, Atlantic City, argued the cause for appellant (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr. Bonchi, of counsel and on the brief; Rosann Allen, on the brief).
Robert W. Keyser, argued the cause for respondents (Taylor and Keyser, attorneys; Mr. Keyser, on the brief).
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiff Phoenix Funding, Inc. owned a tax sale certificate that was redeemed by the property owner's heir, Reva Braun, after Phoenix filed a complaint to foreclose the right of redemption. Defendants Robert and Shartane Krute loaned Reva the money she used to avoid Phoenix's foreclosure by redeeming the certificate. Within three months of the redemption, the Krutes purchased the property from Reva. Phoenix filed a complaint for equitable relief alleging that defendants' indirect redemption of the tax sale certificate, without intervention in the action for foreclosure, violated the Tax Sale Law, N.J.S.A. 54:5-1 to -137. See Simon v. Cronecker, 189 N.J. 304, 335-38, 915 A.2d 489 (2007) (discussing the requirements imposed by N.J.S.A. 54:5-89.1, N.J.S.A. 54:5-98, and R. 4:64-6(b) and the remedy for violation).
Phoenix appeals from a final order denying its motion for summary judgment, granting defendants' cross motion and dismissing the complaint. Because the order is premised on the court's erroneous conclusion that defendants, as personal friends of Reva and her husband Kenneth Braun, were not required to intervene in the action, we reverse and remand for further proceedings consistent with this opinion.
Phoenix's tax sale certificate was for property owned by Robert M. Kline. The certificate was purchased in June 2002, and the complaint to foreclose Kline's right of redemption was filed on January 5, 2005. On November 18, 2005, while Phoenix's foreclosure action was still pending, Kline died.
Kline's sister, Reva, was the executor and sole beneficiary of Kline's will. The will was probated on December 2, 2005. On December 6, 2005, Robert Krute loaned Reva's husband Kenneth $19,478.84, interest free. On December 8, 2005, without intervening in the foreclosure action filed by Phoenix, Reva redeemed the tax sale certificate by paying the tax collector $19,484.84. On December 27, 2005, the tax collector mailed a check in the amount of $18,487.63 to Phoenix.
Within days of the redemption, the Brauns offered to sell the property to the *75 Krutes. Robert Krute had shown interest in the property prior to the redemption. He first visited Kline's property in October 2005, after Phoenix filed the complaint for foreclosure. After that visit Krute retained a real estate attorney to check for judgments against Kline's property and ordered a "search for title insurance." Title to Kline's property was transferred from Reva, as executor of Kline's estate, to the Krutes by deed dated February 23, 2006. The Krutes paid $35,522 and waived repayment of the $19,478.84 loan.
In answers to interrogatories and certifications submitted on the motions for summary judgment, Robert Krute and the Brauns described their long-term friendship and the circumstances that led to defendants' acquisition of title to Kline's property. In 1986 Robert and Kenneth worked for the New York City Transit Police and were "patrol partners." Since that time, they and their families have been close. Over the years, Robert advised the Brauns and loaned them money.
In summer 2005, when Reva's brother told her that he had not been living in his home or paying his bills and asked her to help "straighten" things out, Kenneth sought Krute's advice. Krute told Kenneth to find out whether there were other liens or judgments against Kline's property before deciding whether to pay the taxes. By September, Reva obtained information about her brother's tax debt from the township.
In October, Krute visited Kline at his home. Although Kline had personal property in the house, he had been living elsewhere and the house was in disrepair. It was after that visit that Krute asked his real estate attorney to search for judgments and learned that there were liens in the total amount of approximately $16,000. At that point, Krute offered to loan the Brauns money to save Kline's property.
Krute also told Kline about the loan. According to Krute, Kline explained that he was considering accepting a friend's offer to purchase his property for $55,000. Krute suggested repairs and told Kline he would likely find a buyer who would pay more if the work was done. Krute promised Kline that he would buy the property for $55,000 himself if Kline lost his buyer. Krute then sought a title insurance search so that he would be prepared if Kline wanted him to purchase the property.
When Kline died in November, Kenneth asked Krute to follow through with the loan so that Reva could redeem the tax sale certificate and acquire Kline's property. When the Brauns realized the magnitude of the work involved in readying the property for sale, they changed their minds about keeping the property and offered to transfer it to Krute. He agreed.
An understanding of the nature of the interest Phoenix seeks to vindicate in this action alleging an unlawful redemption of its tax sale certificate provides context for discussion of the legal issues raised. There is no question that Phoenix received what was due for a lawful redemption. The focus of this litigation, like "[t]he heart of the dispute" in Cronecker, is Phoenix's concern that Krute is a competitor, another investor, who interfered with Phoenix's "inchoate right to gain fee simple title to [Kline's] property" upon foreclosure of the tax sale certificate. 189 N.J. at 329, 915 A.2d 489. In short, Phoenix seeks to establish that defendants violated the applicable statutes and court rules by redeeming the certificate "indirectly" through Reva, and, on that ground, seeks to obtain an order permitting Phoenix to acquire Kline's property for the price paid by defendants. See Cronecker, supra, 189 N.J. at 335-38, 915 A.2d 489. Thus, Phoenix does not seek to share in or increase Reva's profit from the Braun-Krute transaction. *76 Phoenix simply wants to obtain the benefit defendants received from that transaction as a remedy for defendants' violation of the Tax Sale Law.
The claimed violation of the Tax Sale Law is based on Phoenix's allegation that the Krutesalbeit indirectly through Reva's tender of the fundsare the persons who actually redeemed this tax sale certificate while the foreclosure action was pending. Phoenix contends that if that is what happened, then the Krutes violated the Tax Sale Law because they were not parties to the pending foreclosure action when they redeemed. We agree.
In order to redeem a tax sale certificate while a foreclosure action is pending, the person must be a party to the action. "[T]he applicable statutes and court rule clearly require that after the filing of a foreclosure action, a person seeking to redeem a tax certificate must be a party to that action." Id. at 335, 915 A.2d 489. The obligation to intervene is plainly stated in N.J.S.A. 54:5-98, N.J.S.A. 54:5-89.1 and Rule 4:64-6(b). See Cronecker, supra, 189 N.J. at 336, 915 A.2d 489. "Any person not named in [a tax sale certificate foreclosure] complaint must move to intervene in the action. Without the court's approval, that person is not entitled to redeem the tax sale certificate." Ibid. (discussing the statutes and rule); see id. at 319-22, 915 A.2d 489 (discussing N.J.S.A. 54:5-54, N.J.S.A. 54:5-86, N.J.S.A. 54:5-89.1 and N.J.S.A. 54:5-98 and comparing the procedural and substantive differences between redemptions that are accomplished before and after a foreclosure action is commenced).
There is support for Phoenix's claim that the obligation to intervene extends to one who redeems "indirectly" through an arrangement of the sort Phoenix alleges. Cronecker, supra, 189 N.J. at 336, 915 A.2d 489. By way of illustration in Cronecker, the Court explained that a person who funds a redemption that is accomplished by an eligible person must intervene if the party providing the funds has acquired a contractual interest in the property that will be transferred after the redemption. Ibid. (noting the Court's intention to "interdict the myriad machinations that a creative mind might devise to elude the Tax Sale Law"). Thus, Cronecker directs courts not to overlook the reality of the transaction. One who is not eligible to redeem under the Tax Sale Law cannot accomplish a redemption by sending one who is eligible to pay the collector.
Defendants assert that Reva, as the sole heir of the property owner, had an absolute right to redeem and could do so without intervening in the foreclosure action. Even if we agreed,[1] the argument misses the point. Phoenix did not claim a right to equitable relief based on the invalidity of Reva's redemption. Phoenix's claim was differentthat defendants redeemed by having Reva make the payment for them.
The question whether the Krutes redeemed indirectly through Reva cannot be *77 resolved on motions for summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540-42, 666 A.2d 146 (1995). The evidence is not so "one-sided as to permit resolution as a matter of law." Id. at 540, 666 A.2d 146 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986)).
The record supports a reasonable inference that the defendants and Reva had an agreement to transfer title before Reva redeemed the tax sale certificate with funds borrowed from Robert Krute. Before Robert Krute made the loan, he took steps that would be taken by a prudent investor who intended to purchase the property. He inspected the property, and he retained professionals to check for judgment liens and search the title. Title was transferred within months of the redemption, but Reva admitted that she offered the property to Krute only days after she redeemed the tax sale certificate.
Although the record permits a finding that there was an agreement to transfer the property prior to the redemption, the record does not compel that conclusion. There is also support for a reasonable inference that the agreement to transfer title was made after the redemption. That inference is supported by the defendants' account of two separate and independent agreements, a loan that allowed Reva to obtain property she wanted and a purchase that allowed her to dispose of the property when she changed her mind.
Because there is a factual dispute about the timing of the agreement to sell that cannot be resolved without assessing credibility, we vacate the order granting defendants summary judgment, affirm the order denying Phoenix summary judgment and remand for further proceedings.
Defendants argue that a remand is not necessary because, as close personal friends of the Brauns, they were not required to intervene. In Cronecker the Supreme Court construed the applicable statutes, N.J.S.A. 54:5-89.1 and 54:5-98, and, as noted above, concluded that "[a]ny person not named in [a tax sale certificate foreclosure] complaint must move to intervene in the action" and obtain the "court's approval ... to redeem the tax sale certificate." Cronecker, supra, 189 N.J. at 336, 915 A.2d 489. Although Cronecker did not involve a close personal friend, neither the text nor purpose of the applicable statutes or the rationale of Cronecker suggests a basis for allowing friends to redeem without moving to intervene in the action.[2]
"After the filing of the foreclosure complaint ... both the property's sale and the redemption procedure are subject to court supervision, primarily to protect property owners from exploitation by third-party investors." Id. at 320, 915 A.2d 489. Court supervision is possible because N.J.S.A. 54:5-98 compels intervention. It provides that "[a]fter the [foreclosure] complaint has been filed redemption shall be made in that cause only...." See ibid.
The substantive protection for the property owner is afforded by N.J.S.A. 54:5-89.1, which, in pertinent part, provides:
No person ... shall ... have the right to redeem the lands from the tax sale whenever it shall appear that he has *78 acquired such interest in the lands for a nominal consideration after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal relationship with the transferor, would in normal course be a party to an instrument for little or no consideration....
[N.J.S.A. 54:5-89.1 (emphasis added).]
Taken together, N.J.S.A. 54:5-98 and N.J.S.A. 54:5-89.1 make it clear that intervention is required and important even when the person is a relative or has a "close or personal relationship" with the property owner. In order to obtain court approval to redeem, the holder of an interest acquired after the complaint was filed, with narrow exceptions not relevant in this case, must establish that a) the consideration given was not "nominal" or b) there is a relationship that meets the statutory criteria. We reject the claim that intervention serves no purpose in cases involving friends and family members. Defendants argue that judicial oversight is not required in such cases because friends and family members may redeem even if they gave "little or no consideration." But, in a case involving a friend or relative, judicial oversight ensures that there is a relationship of the quality the Legislature deems sufficient to obviate the need for scrutiny of the consideration. See N.J.S.A. 54:5-89.1; Cronecker, supra, 189 N.J. at 336, 915 A.2d 489 (noting that intervention "permits judicial oversight of the adequacy of consideration"); Simon v. Rando, 189 N.J. 339, 343, 915 A.2d 509 (2007) (concluding that one who acquires a prior tax sale certificate after the complaint must intervene to permit judicial review of the transaction).
Because we are remanding for further proceedings, we stress that we have not addressed the question of remedy. In Cronecker, the Court fashioned a remedy that it deemed appropriate to preclude a third-party investor from reaping the benefit of an invalid redemption. 189 N.J. at 338, 915 A.2d 489. We express no opinion as to whether the same remedy would be equitable or consistent with purposes of the Tax Sale Law in a case involving an invalid redemption by a close personal friend of the property owner. The trial court can address that issue if and when Phoenix establishes an indirect redemption and defendants establish a close personal relationship.[3]
Reversed and remanded.
NOTES
[1] It is arguable that Reva ought to have intervened in the foreclosure action before redeeming the tax sale certificate. We recognize that N.J.S.A. 59:5-54 expressly authorizes heirs of a property owner to redeem at any time until the right to redeem has been foreclosed, but that right must be exercised in a manner that complies with other provisions of the Tax Sale Law. N.J.S.A. 54:5-54 provides: "Except as hereinafter provided, the owner, [or] his heirs ... may redeem ... at any time until the right to redeem has been cut off...." Another provision of the Tax Sale Law, N.J.S.A. 54:5-98, effectively limits the right during the pendency of a foreclosure action. N.J.S.A. 54:5-98 provides that "[a]fter the complaint has been filed redemption shall be made in that cause only." See Cronecker, supra, 189 N.J. at 319-22, 915 A.2d 489.
[2] In accepting defendants' narrow reading of the applicable statutes and the Cronecker decision, the trial court relied on the Court's explanation of its use of the term "third-party investor" in that decision. See id. at 322 n. 9, 915 A.2d 489. As noted above however, the Court used different terms"any person" and "a person"when identifying persons who must be a party to the foreclosure action in order to redeem after a complaint is filed. See id. at 335-38, 915 A.2d 489.
[3] Before the summary judgment motions were decided, Phoenix requested additional discovery relevant to the existence of a personal relationship between the Krutes and the Brauns. For that reason, further discovery must be permitted before any determination about the nature of that relationship.