**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4406-18T1

PRO CAP II, LLC by its
CUSTODIAN: US BANK,

     Plaintiff,

v.

JAMES WILLIAMS, MRS.
JAMES WILLIAMS, wife of
JAMES WILLIAMS, MONMOUTH
COUNTY TREASURER, NEWARK
BETH ISRAEL MEDICAL CENTER,
COLUMBUS HOSPITAL, EUGENE
DUKES, LANGTON E. BARTON,
CHRISTOPHER CHUDAKOWSKI,
TOMAR, SIMONOFF, ADOURIAN,
O'BRIAN, KAPLAN, JACOBY,
& GRAZIANO, CHRIST HOSPITAL,
EMMA VACCA, INTERBANK OF
NEW YORK n/k/a INVESTORS BANK,
HOUSEHOLD AUTOMOTIVE
FINANCE CORPORATION, FORD
MOTOR COMPANY, VINZINENT
MAIMONE, PETER J. MAIMONE,
NELSON TOBOLSKY, LANDMARK
AMERICA, INC., NEW JERSEY
PROPERTY LIABILITY INSURANCE
GUARANTY ASSOCIATION,
ADMINISTRATOR UNSATISFIED CLAIM

AND JUDGMENT FUND, ADINOLFI & SPEVACK PA, NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, MERCER COUNTY PROBATION SERVICES, NEWARK BETH ISRAEL MEDICAL CENTER, PELLETTIERI RABSTEIN & ALTMAN, ANTHONY BODY, THE TRUST COMPANY OF NEW JERSEY n/k/a CAPITOL ONE, NATIONAL ASSOCIATION, GARDEN HOMES MANAGEMENT, CUMBERLAND INSURANCE, FORD MOTOR CREDIT COMPANY, OIMH RADIOLOGY GROUP, ALAN B. CLARK MD, HOSPITAL & DOCTORS SERVICE BUREAU, RAHWAY MRI, MONTCLAIR COMMUNITY HOSPITAL, PARKWAY MANOR HEALTH CENTER, COUNTY OF CAMDEN, UNIFUND CCR PARTNERS, HOSPITAL CENTER AT ORANGE, CALVARY PORTFOLIO SERVICES LLC, ATLANTIC CREDIT AND FINANCE, AFFINITY FEDERAL CREDIT UNION, WILLIS MORTON, ROY HENDRICKS, WALTER WISE, FRANK GRAVES, CSC TKR, INC. d/b/a  CABLEVISION OF RARITAN VALLEY, JACKSON HEWITT, INC., STATE OF NEW JERSEY and UNITED STATES OF AMERICA,

    Defendants,

and

A-4406-18T1

901 SOUTH 18TH LLC and LOAN
FUNDER LLC SERIES 1968,

      Intervenors-Appellants.

_____

RASHID SAYYID,

      Third-Party Plaintiff-
      Respondent,

v.

THE CITY OF NEWARK,
ESSEX COUNTY SHERIFF'S
OFFICE, PRO CAP II, LLC, and
MOC SOUTH 18 LLC,

      Third-Party Defendants-
      Respondents.

_____

Argued telephonically March 24, 2020 –
Decided April 29, 2020

Before Judges Yannotti and Hoffman.

On appeal from the Superior Court of New Jersey,
Chancery Division, Essex County, Docket No. F-
025248-15.

Michael D. Malloy argued the cause for appellants 901
South 18th LLC and Loan Funder LLC Series 1968
(Finestein & Malloy, LLC, attorneys; Michael D,
Malloy, on the briefs).

Ariadna Peguero, Assistant Corporation Counsel,
argued the cause for respondent City of Newark

A-4406-18T1

(Kenyatta K. Stewart, Corporation Counsel, City of Newark-Department of Law, attorney; Azeem M. Chaudry, Assistant Corporation Counsel, and Ariadna Peguero, on the brief).

Sylvia Hall, Assistant County Counsel, argued the cause for respondent Essex County Sheriff's Office (Courtney M. Gaccione, Essex County Counsel, attorney; Sylvia Hall, on the brief).

Wanda M. Akin argued the cause for respondent Rashid Sayyid (Wanda M. Akin & Associates, attorneys, join in the brief of respondent City of Newark).

PER CURIAM

In this tax sale certificate foreclosure action, intervenors 901 South 18th LLC (South LLC) and Loan Funder LLC Series 1968 (Loan Funder) appeal from Chancery Division orders vacating the Sheriff's sale of the family home of respondent Rashid Sayyid, who inherited the property as his father's sole intestate heir, when his father died in 2012. In vacating the sale, the motion judge concluded Sayyid redeemed the property before delivery of the Sheriff's deed.

On appeal, appellants contend the judge abused his discretion by vacating the Sheriff's sale. They assert that while Sayyid may have had the right to redeem, he did not validly redeem the property under the applicable provisions of our Tax Sale Law (the Act), N.J.S.A. 54:5-1 to -137. Specifically, they contend that, under N.J.S.A 54:5-98, once the foreclosure complaint was filed, redemption of the

property could have been made "in that cause only." Having considered the arguments and applicable law, we affirm.

I

We glean the following facts from the record. James Williams, Sayyid's father, owned a home (the home or the property) located on 18th Street in Newark. On November 15, 2012, Sayyid became his father's legal guardian due to ongoing medical issues. On November 26, 2012, Williams died intestate, leaving Sayyid as his sole heir.

After his father died, Sayyid continued to reside in the home, but took no action to administer his father's estate. Nor did he record a deed reflecting that he inherited the home. Sayyid's family has lived in the home for over 40 years. He currently resides there with his "significant-other," five young children, and a young adult who suffers from "bipolar [disorder], epilepsy and has neurological impairment." Sayyid recalled he began receiving notices from the City of Newark regarding overdue tax payments "beginning in 2013 or 2014."

On February 8, 2013, Pro Cap II, LLC (Pro Cap) purchased the tax sale certificate[1] for the home issued by the City of Newark Tax Collector – due to

---

[1] The Act provides a mechanism for individuals or entities to purchase tax liens from municipalities and initiate foreclosure actions against property owners who

delinquent taxes, water and sewer charges.  On June 16, 2015, Pro Cap sent a letter to the property addressed to James Williams, indicating he had thirty days to redeem the tax sale certificate or a foreclosure action would commence.

On July 20, 2015, Pro Cap filed its complaint commencing the foreclosure action, naming "James Williams; Mrs. James Williams, Wife of James Williams" as defendants, along with John Doe and Jane Doe.  The complaint did not name the "heirs" of James Williams as defendants.  On July 22, 2015, Pro Cap attempted to serve a copy of the summons and complaint on Williams.  Sayyid accepted service of the complaint.  Thereafter, Pro Cap filed an affidavit of service, which verified Sayyid told the process server that he was James Williams' son.  It appears Sayyid did not mention his father's passing.

On August 20, 2015, Sayyid attempted to file an answer to the complaint, signing as "James Williams."  The answer was marked received but not filed because Sayyid

are delinquent in paying their property taxes.  The foreclosure process begins when a property owner fails to pay the property taxes, as the unpaid balance becomes a municipal lien on the property. N.J.S.A. 54:5-6. "When unpaid taxes or any municipal lien . . . remains in arrears on the [eleventh] day of the eleventh month in the fiscal year when the taxes or lien became in arrears, the collector . . . shall enforce the lien by selling the property . . . ." N.J.S.A. 54:5-19. Upon completion of the sale, a certificate of tax sale is issued to the purchaser. N.J.S.A. 54:5-46.

failed to include a case information statement with the answer. On September 4, 2015, defendant filed the same answer, again signing it in his father's name.

On December 8, 2015, Pro Cap filed a second amended foreclosure complaint adding approximately fifty additional defendants reflecting persons and entities whose names appeared on a judgment search of James Williams' name; however, this amended pleading again failed to include the heirs of James Williams as defendants.

On May 24, 2016, Pro Cap filed a motion for entry of default and final judgment in the tax sale foreclosure action. On June 29, 2016, the court entered final judgment in favor of Pro Cap and against Williams for $24,950.50, plus interest and counsel fees. A writ of execution issued on June 29, 2016.

On March 21, 2017, the home was sold at a Sheriff's sale to third-party purchaser MOC South 18 LLC (MOC) for $66,000. Thereafter, the Sheriff's Office tendered $32,044.25 to Pro Cap and sent the surplus of $32,394.78 to the Clerk of Superior Court in Trenton. The Sherriff's commission for the sale, including fees, was $3,678.50.

At the time of sale, James Williams remained the record owner of the home. Sayyid did not move to intervene in the action nor was he present at the sale.

Nevertheless, on April 19, 2017, Sayyid went to the office of the City of Newark's Tax Collector and tendered $30,652.79, the amount the Tax Collector told him was due in order to redeem the property. The Tax Collector accepted his tender and issued a certificate of redemption.

Shortly after Sayyid purportedly redeemed the property, he claimed to have spoken to an agent of MOC, who told him that her company owned the property. This prompted Sayyid to go to the Sheriff's Office on April 24, 2017. According to Sayyid, a person in the office told him he still had time to file a motion to vacate the Sheriff's sale. The same individual also allegedly told him "[he] could file it [himself] as [his] father's Legal Guardian or [he] could hire a lawyer to file it for [him]."

On April 26, 2017, Sayyid attempted to file a motion to vacate the Sheriff's sale. Under his father's name, he filed a "Certification in Support of Motion," which referenced a motion to vacate sale; however, he was unsuccessful because the motion was nonconforming under Rule 1:5-6(c)(1). Moreover, his certification of service only named Pro Cap as a party.

The next day, on April 27, 2017, after Sayyid received his first certificate of redemption, MOC received the Sheriff's deed for the property. On May 3, 2017, Sayyid returned to the office of the City's Tax Collector because he continued

"receiving calls from people who claim they own my house." The office informed Sayyid that he owed an additional $4,185.57, to be paid by May 31, 2017, in order to successfully redeem the property. On May 12, 2017, MOC recorded its Sheriff's deed for the property in the Essex County Clerk's Office. On May 30, 2017, Sayyid paid the additional monies, which the Tax Collector accepted, and then issued a second certificate of redemption to him.

Pro Cap, despite having knowledge of the Sheriff's sale, certified that – because it was unaware of MOC's completion of the purchase and since over a month had passed with the Sheriff failing to remit any funds – it endorsed the tax sale certificate for cancellation and returned it to the Tax Collector in exchange for the redemption proceeds.

On August 7, 2017, Pro Cap filed a stipulation of dismissal for the foreclosure action. On August 24, 2017, MOC sold the property to South LLC for $125,000. Loan Funder financed the purchase and took a first mortgage on the property. Sayyid and his family remained in the property throughout this time.

On August 29, 2017, MOC filed an ejectment action seeking possession of the property, MOC South 18 LLC v. Angelina Keamey, Rashid Sayyid, et. al, Docket No. ESX-DC-17702-17. On September 21, 2017, the court dismissed the ejectment action and advised MOC to seek a writ of possession under the foreclosure docket

A-4406-18T1

number. Accordingly, on September 26, 2017, MOC applied for a writ of possession in the foreclosure action. On October 2, 2017, the court denied the application because Pro Cap previously dismissed the case. On October 4, 2017, MOC moved to vacate Pro Cap's dismissal.

On October 27, 2017, Sayyid filed a motion to intervene and opposed MOC's motion to vacate. On November 27, 2017, the court granted Sayyid's motion to intervene, and on November 30, 2017, granted MOC's motion to vacate the dismissal.

On December 7, 2017, Sayyid answered the second amended complaint in foreclosure, counterclaiming against Pro Cap and filing a third-party complaint against the City of Newark and the Essex County Sherriff's Office. South LLC then filed a motion to strike defendant's answer, contending the final judgment in foreclosure had never been vacated.

On January 24, 2018, the court entered an amended order vacating Pro Cap's August 7, 2017 dismissal and permitting South LLC to file a writ of possession; however, the parties were to take no further action regarding possession of the property pending further court order.

A-4406-18T1

On January 29, 2018, Sayyid filed a motion to vacate the June 29, 2016 default judgment in foreclosure and to set aside the Sheriff's sale. On June 6, 2018, the motion judge held a hearing on defendant's motion.

At the hearing, Sayyid, while acknowledging some degree of fault, took the position that he was an unsophisticated party who lacked understanding of the situation, and that, once he realized what had occurred, Pro Cap and the Sherriff's Office – who had control and knowledge of all parties' positions – allowed him to redeem. Furthermore, since he did everything as instructed, any procedural bar should be set aside due to "equitable circumstances."

Pro Cap continued to contend it had no knowledge of MOC's completed purchase after the Sheriff's sale because it never received a deposit. As a result, when the Sheriff's Office communicated that Sayyid was attempting to redeem the property, it accepted the redemption.

MOC and South LLC took the position that Sayyid received proper notice from the outset of the matter and the court should consider his actions. They further asserted, citing N.J.S.A. 54:5-98, that once a foreclosure action on a tax lien commences, the only method for proper redemption was by filing with the court in the existing foreclosure action. Therefore, they contended Pro Cap and the Sherriff's

Office had no authority to accept Sayyid's redemption once the foreclosure action commenced.

On October 25, 2018, the motion judge placed his oral decision on the record. The judge considered the motion to vacate judgment before him under Rule 4:50-1. Addressing the parties' arguments, he first found the City's Tax Collector and Pro Cap properly served Sayyid throughout the foreclosure process. He also took note of Sayyid's failure to probate his father's estate, record the deed, and notify the parties of his father's passing. Accordingly, the judge concluded defendant could not vacate the judgment based on excusable neglect or exceptional circumstances based on his lack of legal training because "[a] property owner knows that he must pay taxes on his property and that if he fails to do so the municipality will sell the property[.]"

Next, the motion judge turned to defendant's equitable argument.

> The Chancery Division of course has the authority to set aside a [S]heriff sale and order a resale of property. [First Trust Nat. Assoc. v. Merola, 39 N.J. Super. 44 (App. Div. 1999).] The [courts] have recognized that such sales may be set aside by reasons of fraud, accident, surprise, or mistake, irregularities in the conduct of the sale and so on. But, caution that a judicial sale is not ordinarily vacated on the grounds of mistake flowing from a moving party's own culpable negligence.

A-4406-18T1

The judge further noted that "courts have established that redemption may be made at any time prior to the delivery of the sheriff's deed[,]" citing <u>Mercury Capital Corp. v. Freehold Office Park, Ltd.</u>, 363 N.J. Super. 235 (Ch. Div. 2003).

The motion judge concluded Sayyid's redemption was not barred, finding he redeemed the property before the Sheriff issued the deed to MOC. He considered it irrelevant that a balance remained after the initial tender because Sayyid, each time, paid exactly what the Sherriff's Office advised him to pay.

In response to the appellants' argument that N.J.S.A. 54:5-98 controlled, the judge reasoned that, when balancing the equities, owners and heirs are differently situated, and therefore treated differently, as compared to third-party purchasers. Furthermore, while Sayyid failed to pay the redemption amount in the action, "the payment was made in the case because [Pro Cap] obviously entered into a voluntary dismissal settling the case because of the payment that was made."

As a result, after balancing the equities and considering the actions taken by all parties, the motion judge set aside the Sheriff's sale, entering an order the same day. The court later issued an order dated April 30, 2018, which clarified the October 25, 2018 order and provided further directives to the parties. This appeal followed.

A-4406-18T1

South LLC and Loan Funders continue to contend the Act required Sayyid to first intervene in the foreclosure action and then get approval from the court to redeem the property. They argue that requiring "redeemers" to intervene in the action advances the goals of notice and transparency.

We review a trial court's order regarding intervention in a tax sale foreclosure under an abuse of discretion standard. Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 172 (App. Div. 2005). An abuse of discretion occurs where a decision is made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

As noted by the City of Newark, this case does not involve the actions of a third-party to redeem in a foreclosure action by acquiring an interest in the property during the pendency of the foreclosure action; instead, this matter involved Sayyid's redemption of his own property, which he acquired upon the death of his father.

In Simon v. Cronecker, 189 N.J. 304, 335-36 (2007), our Supreme Court interpreted the redemption statute, N.J.S.A. 54:5-98, to generally require that a

person who seeks to redeem a tax certificate, whether directly or indirectly, to intervene in the foreclosure action to allow for the protection of property owners through judicial oversight of the foreclosure process. The Court reasoned that this interpretation gives effect to the Legislature's goal of protecting distressed property owners from predatory third-party investors, who might seek to acquire the homeowner's property interest for "nominal value" and redeem the property for themselves. Id. at 323-24, 336. Although the Court observed that the conduct of the third-party investor in Cronecker did not violate "a social policy embodied in the Tax Sale Law," it found that the investor was still required to intervene in the foreclosure case to permit judicial oversight of the transaction because it obtained a property interest. Id. at 328, 337.

This court later applied Cronecker to a situation involving close family friends of a homeowner who had lent the owner money that was used to redeem a tax certificate. Phoenix Funding, Inc. v. Krute, 403 N.J. Super. 261, 264-65 (App. Div. 2008). Notably in Krute, the friends were interested in acquiring the property themselves from the homeowner, who herself was looking to dispose of the house, which had fallen into disrepair. Id. at 265. The friends purchased the property shortly after it was redeemed. Id. at 264. We held in Krute that "the obligation to intervene extends to one who redeems 'indirectly' through an

15

arrangement of [this sort,]" reasoning that Cronecker "directs courts not to overlook the reality of the transaction" in determining whether a third party sought to redeem a tax certificate "indirectly" through the homeowner. Id. at 267.

Nevertheless, the Supreme Court in Cronecker made clear that only those parties who acquire or intend to acquire a property interest by facilitating redemption need to intervene in the tax foreclosure action. Cronecker, 189 N.J. at 336. The Court explicitly and repeatedly discussed "interested" third parties throughout its opinion. Id. at 337. Its reasoning was premised on the need to protect property owners from such third parties because of the ownership interest such third parties seek to acquire:

> In the post-foreclosure complaint stage, the requirement that a person, directly or indirectly, seeking to redeem a tax certificate "be admitted as a party to such action" permits judicial oversight of the adequacy of consideration offered for the property interest.
>
> By forbidding an interested investor, who is not a party to the foreclosure action from "indirectly" seeking redemption, we intend to interdict the myriad machinations that a creative mind might devise to elude the Tax Sale Law.
>
> [Id. at 336. (citations omitted)]

Plaintiff's assertion that a property owner must intervene, regardless of owning the property, contradicts both the Court's reasoning in Cronecker, as well as the public policy and legislative intent of the Act. The specific evil the Legislature sought to address in N.J.S.A. 54:5-98 are the acts of predatory third parties who seek to take advantage of distressed property owners. Cronecker, 189 N.J. at 323-24, 336. A property owner who redeems his own property does not implicate the Legislature's concern.

The case before the motion judge presented such circumstances. Because Sayyid owns the property in question, he was not required to intervene in the foreclosure proceedings in order to effect redemption. The Tax Collector accepted Sayyid's payments twice and issued two separate certificates of redemption. This led Sayyid to believe his actions were proper. Moreover, Pro Cap, which filed the foreclosure action, was compliant in allowing defendant's redemption. Therefore, the equitable result reached here was not an abuse of the motion judge's discretion. We find no reason to disturb the motion judge's equitable resolution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4406-18T1